UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BOBBIE JO PROHASKA,

        **Plaintiff,**

        v.                                Case No. 24-C-1236

**FRANK J. BISIGNANO,**
**Commissioner of Social Security,**

        **Defendant.**

## DECISION AND ORDER AFFIRMING THE DECISION OF THE COMMISSIONER

      Plaintiff Bobbie Jo Prohaska filed this action for judicial review of a decision by the Commissioner of Social Security denying her applications for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff asserts that the decision of the administrative law judge (ALJ) is flawed and requires remand. For the reasons that follow, the court concludes that the Commissioner's decision should be affirmed.

## BACKGROUND

      Plaintiff filed an application for a period of disability and disability insurance benefits and an application for supplemental security income on August 12, 2021. She asserted an inability to work due to broken bones (collarbone, pelvis, and toes), hip problems, and depression, as well as difficulty standing, walking, bending, lifting, and sitting. R. 248, 261. Plaintiff further reported Post-Traumatic Stress Disorder (PTSD), anxiety, limited social interaction, and low energy levels. R. 602. After her applications were denied initially and on reconsideration, Plaintiff requested a

hearing before an ALJ. ALJ Margaret O'Grady conducted a hearing on December 12, 2023. Plaintiff, who was represented by counsel, and a vocational expert (VE) testified. R. 12–41.

At the time of the hearing, Plaintiff was 47 years old and lived with her boyfriend in a multi-unit home. R. 17. Plaintiff was 5'2" and weighed 145 pounds, which she described as being above her normal weight. *Id.* The highest grade Plaintiff completed in school was the eleventh grade, and she did not earn her GED or HSED. R. 18. Plaintiff worked a number of different jobs as an adult, including home healthcare provider, manager of housekeeping, cashier manager, electrician, and, most recently, sandblaster. R. 18–20. She did not perform any work after 2020. R. 18.

Plaintiff testified that she was in a car accident on November 24, 2020. *Id.* She explained that, since the accident, she has had steady pain in her legs, pelvic area, and lower back. R. 22. She indicated that she is unable to drive due to weakness in her legs and her pain makes sitting or standing for more than 10 to 15 minutes unbearable. Plaintiff testified that when she does walk, she uses a four-post walker or receives assistance from her boyfriend, and that a cane does not provide her adequate support. R. 22, 26–28. Additionally, Plaintiff indicated she struggles to lift her dominant, right arm. More specifically, when asked at the hearing if she was having difficulty lifting or raising her right arm, Plaintiff explained that she could not lift anything more than a half-gallon of milk in weight and that her arm goes numb after seconds of being held up. R. 30–31.

As for day-to-day activities, Plaintiff indicated that she is able to take care of personal needs, like hygiene and dress, but normally waits until her boyfriend is home from work to do so. Plaintiff testified that she is able to cook and do dishes with breaks. But she does not do laundry, housecleaning, or yardwork. R. 23. Plaintiff stated that she does not drive, nor does she go

2

shopping or to the grocery store; she only rides in the car to attend medical appointments or the occasional family gathering. R. 24.

For her pain, Plaintiff testified that she takes medication (celecoxib), uses a pain-relief gel, gets injections, and attends physical therapy. R. 21–22, 25, 30. With respect to her mental health, Plaintiff testified that she sees a psychiatrist twice a month and takes medication (escitalopram and prazosin) to treat her generalized anxiety, depression, and PTSD. She indicated that her mental health has been improving since the accident. R. 23, 28–29. According to Plaintiff, her medications make her sleepy. R. 22.

In a seventeen-page decision dated February 21, 2024, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from November 25, 2020, through the date of the decision. R. 86–102. Following the Agency's sequential evaluation process, the ALJ found that Plaintiff did not engage in substantial gainful activity since November 25, 2020, the date of the alleged onset date. R. 88. Next, the ALJ determined that Plaintiff had the following severe impairments: lumbar and cervical degenerative disc disease; status-post multiple fractures, including fractures of the SI joint, pubic bone, sacrum, nasal bone, and left foot; left clavicle dislocation; right trochanteric bursitis; anxiety; depression; and PTSD. R. 89. The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

After reviewing the record, the ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) with the following limitations:

> [S]he can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps or stairs; she can occasionally stoop, crouch, crawl, kneel, and balance; she is able to occasionally reach overhead with the upper extremities; she is unable to work at unprotected heights, with hazards or with dangerous moving machinery; she is

3

unable to drive a motor vehicle as a job task. The claimant is able to understand, remember, and carry out simple, noncomplex instructions; she is able to concentrate and maintain pace for 2-hour periods with standard breaks; she is able to occasionally interact with co-workers and supervisors, but cannot have public interaction.

R. 91. Considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that she was unable to perform any past relevant work as actually or generally performed. R. 99. But considering the same, the ALJ concluded that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform including document preparer, lens inserter, and final assembler. R. 100–01. Accordingly, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. R. 101. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, making that decision the final decision of the Commissioner.

## LEGAL STANDARD

The Commissioner's final decision will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. § 405(g); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009)). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowell v. Kijakazi*, 72 F.4th 810, 813 (7th Cir. 2023) (internal quotation marks and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811 (citing *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009)). The ALJ "must build an accurate and logical bridge from the evidence to his conclusion[s]." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (citation omitted); *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998)).

The ALJ is also expected to follow the Social Security Administration's (SSA) rulings and regulations. Failure to do so, unless the error is harmless, requires reversal. *See Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court "does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999); *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)).

## ANALYSIS

**A. Evaluation of Medical Opinion Evidence**

Plaintiff asserts that the ALJ erred in evaluating the medical opinions of Meghan M. Hawley, O.T., and Psychological Consultative Examiner Steve Krawiec, Ph.D. Under the current regulations, an ALJ is not required to give specific evidentiary weight to any medical opinions. 20 C.F.R. § 404.1520c(a). Instead, the ALJ must focus on the persuasiveness of the medical opinions by considering supportability, consistency, the relationship with the claimant, specialization, and other factors. § 404.1520c(c). The regulation explains that supportability and consistency are the "most important factors" to consider. § 404.1520c(b)(2).

**1. Meghan M. Hawley, O.T.**

Plaintiff argues that the ALJ failed to properly evaluate the examining source opinion of Ms. Hawley. On October 12, 2021, Ms. Hawley conducted a functional capacity evaluation of Plaintiff with the goal of determining Plaintiff's maximum abilities. R. 533–34. Plaintiff was able to occasionally carry, push, and pull between 11 and 13 pounds; occasionally work with arms

overhead; occasionally lift 14 pounds from the floor to her waist; and occasionally lift 11 pounds from waist to eye level. R. 533. Ms. Hawley noted, however, that Plaintiff self-limited during these exercises by stopping before maximum physical effort was achieved because of pain. Consequently, Ms. Hawley did not make a finding as to maximum ability for these exercises. *Id.* Plaintiff did not, however, self-limit during the forward reaching exercise. R. 534. In regard to Plaintiff's upper extremity function, Ms. Hawley found that Plaintiff could occasionally handle, frequently finger, and occasionally reach at the waist. R. 536.

Plaintiff asserts that the ALJ improperly rejected Ms. Hawley's opinion because she was not an acceptable medical source under the regulations. But contrary to Plaintiff's assertion, the ALJ did not reject Ms. Hawley's opinion because she is not an acceptable medical source. Instead, the ALJ merely noted that, under the regulations, Ms. Hawley is not an acceptable medical source. Plaintiff does not dispute that Ms. Hawley does not meet the definition of "acceptable medical source" under 20 C.F.R. § 404.1502(a). Notwithstanding the fact that Ms. Hawley was not an acceptable medical source, the ALJ nevertheless proceeded to evaluate her opinions using the § 404.1520c factors.

Plaintiff also argues that the ALJ failed to explain why she did not adopt Ms. Hawley's findings related to Plaintiff's forward reaching limitations. She observes that the RFC only includes a limitation for overhead reaching and not forward reaching. *See* R. 91 ("[S]he is able to occasionally reach overhead with upper extremities."). Even though the ALJ did not explicitly reference Ms. Hawley's forward reaching limitations, an ALJ is not held to the standard of articulation that Plaintiff demands. The ALJ's decision will be upheld if "substantial evidence" supports it and the court is able to trace the ALJ's path of reasoning to conduct a meaningful review. *Clifford*, 227 F.3d at 874. After reviewing the ALJ's decision in its entirety, the court

6

concludes that the ALJ provided ample explanation for the limitations she found. *See Thorlton v. King*, 127 F.4th 1078, 1082 (7th Cir. 2025) (indicating that courts are to review an ALJ's decision holistically).

The ALJ accorded the opinions of Ms. Hawley some persuasive value. R. 97. She noted that, while the findings overall indicated a sedentary exertional capacity, she did not adopt the limitations verbatim for postural and manipulative activities. The ALJ explained that, as acknowledged by Ms. Hawley, Plaintiff refused to attempt some of the tasks and her effort was self-limiting. *Id.* She also found that the limitations for handling and fingering were not consistent with other evidence of record, which showed Plaintiff had intact range of motion, sensory functioning, and dexterity of the bilateral upper extremities. R. 98. The ALJ observed that a subsequent evaluation showed that Plaintiff's shoulder range of motion was normal and that treatment records were largely absent for complaints of persistent symptoms or treatment for the non-dominant left and the right upper extremities. R. 95 (citing R. 377–84). In any event, in consideration of Plaintiff's subjective complaints, the ALJ noted that she significantly reduced Plaintiff's postural demands as well as reaching overhead with the upper extremities. R. 96. The ALJ's detailed review of Ms. Hawley's findings evidence full consideration of her opinions. The ALJ provided "an accurate and logical bridge" between the evidence and her conclusions. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (internal quotation marks and citation omitted).

**2. Steve Krawiec, Ph.D.**

Plaintiff asserts that the ALJ failed to properly evaluate the examining source opinion of Dr. Krawiec. Dr. Krawiec completed a psychological examination of Plaintiff on May 11, 2022. R. 602–04. He diagnosed Plaintiff with PTSD and major depressive disorder. R. 604. Dr. Krawiec summarized his findings as follows:

> This individual did not come across as one [with] notable cognitive impairment, including difficulty with attention, concentration, or memory. I do not have reason to think that she would have difficulty handling the cognitive demands of the workplace. However, if she would be experiencing anxiety-type symptoms that perhaps could interfere as anxiety can at times interfere with cognitive processing. Her mood possibly interfere [sic] with things such as persisting and maintaining pace as she spoke of having sleep difficulty and low energy.
>
> I do not have reason to think that she would have difficulty with regard to interacting with others in terms of being disagreeable or anything of that sort. With regard to adapting and managing herself, I think that she could perhaps have some difficulty maintaining well being in a work setting given her difficulties.

*Id.*

The ALJ found Dr. Krawiec's opinions "somewhat persuasive." R. 99. She explained that his opinions are vague in that they do not specify the degree of Plaintiff's mental limitation. But to the extent they represent mild to moderate mental limitations, the ALJ found the opinions were supported by his clinical examination findings. The ALJ observed that, during the exam, Plaintiff demonstrated a subdued affect but had understandable, well-organized, and goal-directed speech; she exhibited no deficits in memory, attention, concentration, or cognitive functioning; and her judgment was deemed intact. *Id.*

Plaintiff argues that the ALJ did not include a limitation in Plaintiff's RFC about her difficulty maintaining well-being in a work setting consistent with Dr. Krawiec's opinions. But Dr. Krawiec did not find that Plaintiff had limitations in terms of adapting and managing in a work setting. Rather, Dr. Krawiec opined that Plaintiff "could perhaps" have "some" difficulty maintaining well-being in a work setting. R. 604. Because Dr. Krawiec did not include additional restrictions to accommodate any difficulty Plaintiff may have in maintaining well-being at work, the ALJ did not err in evaluating Dr. Krawiec's opinion.

8

## B. RFC

Plaintiff asserts that the ALJ's RFC finding failed to account for all of her mental limitations. An RFC is an assessment describing the extent to which an individual's impairments may cause physical or mental limitations or restrictions that could affect her ability to work. SSR 96-8p, 1996 WL 374184, at *2. The RFC represents "the maximum a person can do—despite his limitations—on a 'regular and continuing basis,' which means roughly eight hours a day for five days a week." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (quoting SSR 96-8p). In forming the RFC, an ALJ must review all of the relevant evidence in the record and "consider all limitations that arise from medically determinable impairments." *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014). An RFC assessment "is a matter for the ALJ alone" to decide. *Id.* at 808. The ALJ must consider the "entire record" and "is not required to rely entirely on a particular physician's opinion." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). In assessing a claimant's RFC, the ALJ has the responsibility of resolving any conflicts between the medical and nonmedical evidence. *Pepper*, 712 F.3d at 363. The court's task "is to determine whether substantial evidence supports the ALJ's RFC conclusion." *Id.*

Plaintiff argues that the ALJ's RFC finding failed to include any functional limitation that corresponded to Plaintiff's moderate limitations in her ability to adapt or manage herself. Though Plaintiff contends that Dr. Kraweic opined that, in terms of adapting and managing herself, Plaintiff had difficulty maintaining well-being in a work setting, Dr. Kraweic did not make such a finding. He said "she could perhaps have some difficulty maintaining well being in a work setting given her difficulties." R. 604. More importantly, he did not suggest any limitation that would address his concern. Other evidence considered by the ALJ, including the state agency psychological consultants, do not reflect such a concern.

It is Plaintiff's burden to provide proof that adapting and managing herself would impact or limit her capacity to work. Without any explanation from Plaintiff or a medical source that additional limitations were needed to accommodate Plaintiff's ability to adapt or manage herself, the ALJ did not err in failing to create her own. The ALJ fulfilled her role by reviewing all the evidence in the record and making appropriate inferences to formulate Plaintiff's RFC. The ALJ's decision is supported by substantial evidence, is not patently wrong, and does not necessitate remand.

## CONCLUSION

For the above reasons, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED** at Green Bay, Wisconsin this 3rd day of November, 2025.

William C. Griesbach
United States District Judge